**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| TILKIN & CAGEN, INC.., | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 1564 |
| | ) | |
| v. | ) | |
| | ) | Judge Milton Shadur |
| UNITED METAL RECEPTACLE CORP., | ) | |
| RUBBERMAID COMMERCIAL PRODUCTS, LLC, | ) | |
| and RICHARD WEISS | ) | |
| | ) | |
| Defendants. | ) | |

**RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**
**AGAINST UNITED METAL RECEPTACLE CORP. AND RICHARD WEISS**

Defendants United Metal Receptacle Corporation ("United")[1] and Richard Weiss

("Weiss"), by their counsel, respectfully move to dismiss Counts I, II, IV, V and VI of the

Complaint filed by plaintiff Tilkin & Cagen, Inc. ("Tilkin") pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.

## INTRODUCTION.

Tilkin, an independent sales representative, has filed a six-count Complaint against

United, Weiss and Rubbermaid Commercial Products LLC ("Rubbermaid") seeking an endless

stream of future commissions.  Tilkin claims entitlement to this award because it once helped

place into catalogs products that were once sold by United.  Tilkin no longer places any United

products in catalogs, as its oral contract with United was terminated in June 2007.  Moreover,

United no longer even sells any products, because it sold all of its assets to Rubbermaid and

ceased operations in June 2007.

---

[1]    As discussed herein, in July 2007 United Metal Receptacle Corp. filed with the Commonwealth of
Pennsylvania an Article of Amendment changing its corporate name to Baracca, Inc.  For purposes
of continuity and ease of reference, Baracca, Inc. will be referred to herein as "United."

Tilkin's claims against United and Weiss are defective under any legal theory. Because United no longer makes any sales at all, it no longer makes sales for which it must pay a commission to Tilkin, under the arrangements even as alleged by Tilkin. Likewise, Tilkin's unjust enrichment count against United is based entirely upon the contractual relationship between those two entities, and thus fails as a matter of law. Finally, each of the theories Tilkin advances against Weiss are classically-improper attempts to hold a corporate officer liable for a corporation's alleged obligations, and two such counts are premised upon an "information and belief" allegation that is squarely belied by the public records of the Commonwealth of Pennsylvania.

## FACTS ALLEGED BY TILKIN

### I.    The Parties.

Tilkin is "engaged in the business of providing independent sales representation to companies in the trash receptacle and material handling industries, among others, including by obtaining placement of products into the catalogs and websites of industrial distributors who go to market via catalogs." (Tilkin's Complaint ("Cmplt.") ¶ 1.)

United was a privately-owned manufacturer of metal trash and waste receptacles located in Pottsville, Pennsylvania. (*Id.*, ¶ 2.) As of June 2007, United sold substantially all of its assets to Rubbermaid and ceased all operations and sales. (*Id.*, ¶ 28.) Although Tilkin alleges "[o]n information and belief, United Receptacle has been dissolved" (*Id.*, ¶ 43), it is obvious from public records that United was not dissolved but simply effected a change of its corporate name to Baracca, Inc. in July 2007. (*See* Articles of Amendment – Domestic Corporation, dated July 3, 2007, attached hereto as Exhibit A.)[2]

---

[2]    Because the Articles of Amendment is a public record, the Court can consider the Articles in connection with this Motion. *See GE Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080-

Weiss is the "President, Chairman, CEO and majority shareholder" of United.  (Cmplt., ¶ 4.)

Rubbermaid produces a wide array of commercial products, including, inter alia, trash and waste receptacles and containers.  In June 2007, Rubbermaid became the owner of the United name and product lines and thereafter began selling the products formerly sold by United and received "all of the revenue and profits" from sales of the former United products. (*Id.*, ¶¶ 28-29.)

## II.    Tilkin's Oral Agreement With United.

Tilkin alleges that it entered into an oral sales representative agreement with United in 1980 (the "Oral Agreement").  (Cmplt., ¶ 9.)  Under the Oral Agreement, Tilkin agreed to arrange for the placement of United's products in the catalogs of various industrial distributors. (*Id.*)  In return, United agreed to pay Tilkin a percentage of the revenue it received from sales of its products through those catalogs.  (*Id.*, ¶ 10.)  Tilkin alleges that the commission was "computed as a percentage of all of the sales flowing from such industrial distributors, including through their catalogs and eventually their websites."  (*Id.*)

Over the "28-year relationship" following the Oral Agreement, Tilkin "secured and maintained space for United Receptacle products in the national catalogs and websites of various industrial distributors."  (*Id.*, ¶ 11.)  Tilkin alleges that the "commission rate [under the Oral Agreement] changed over time as agreed by the parties, and as of 2007, was 5.5% on all accounts except two (Upbeat, Inc. and Direct Supply, Inc.), which were commissioned at 2.5%." (*Id.*, ¶ 10.)

81 (7th Cir. 1997)("The courts, however, have crafted a narrow exception to ... permit a district court to take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment").

Tilkin does not allege that it was entitled, under the Oral Agreement, to commissions on sales made by any successor to United or by any company other than United.  In other words, Tilkin does not – and cannot – allege that United agreed to pay commissions on sales for which United itself receives nothing.

### III.    United Terminates The Oral Agreement And Sells Assets to Rubbermaid.

On June 18, 2007, following the sale of United's assets and name to Rubbermaid, Weiss "informed Tilkin of its termination, effective in thirty days."  (Cmplt., ¶ 14.)  United continued to pay Tilkin commissions on "the sales of United Receptacle products by Tilkin's distributor clients" for thirty days after the notice of termination.  (*Id.,* ¶ 16.)

Tilkin does not allege that <u>United</u> sold <u>any products at all</u> after it terminated Tilkin.  Tilkin attempts to skirt this deficiency by pleading in the passive voice.  For example, it alleges that "sales of United Receptacle products continue" (*Id.*, ¶ 16) and describes "continuing sales of United Receptacle products" (*Id.* at ¶ 17).  The unspoken actor making the sales in these allegations is Rubbermaid, not United.  Tilkin explicitly pleads as much:

> "the assets of United Receptacle were acquired by defendant Rubbermaid . . . in or about June 2007 for approximately $40.5 million.  These assets included the space occupied by United Receptacle's products in the various industrial distributors' catalogs and websites . . . as well as the revenue stream resulting from the sales of those products through the catalogs.
>
> Since June 2007, Rubbermaid has continued to fill all orders for United Receptacle products purchased through the catalogs / websites in which Tilkin obtained space for United Receptacle's products.  . . . Rubbermaid has realized a benefit by securing and keeping for itself all of the revenue and profits derived from such sales . . ..

(*Id.*, ¶¶ 28-29.)  Despite acknowledging that Rubbermaid was the only company selling (former) United products after June 2007, Tilkin alleges that United must pay commissions for these post-June-2007 sales.  (*Id.*, ¶ 16.)

–4–

Tilkin concludes that it is entitled to commissions for all sales, <u>potentially infinitely into the future</u>, which Tilkin claims to have "procured," including any sales from catalogs in which Tilkin ever secured placement of United's products (even if Tilkin was not involved in the actual placement of those products).  (*Id.*, ¶¶ 16, 18-19.)  According to Tilkin, United must pay commissions on "such sales [made by Rubbermaid] for as long as they continue."[3]  (*Id.*, ¶ 18.)

## **ARGUMENT**

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), F.R.C.P., the Court must construe the Complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true.  *Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461 (7th Cir.).  Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action.  *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir.).  Although the Court is generally limited to the allegations in and the attachments to the complaint, it may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.  *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997).

I.    **Counts I and II Against United Should Be Dismissed Because Tilkin Alleges No Post-Termination Sales By United.**

Both Count I ("Breach of Contract/Procuring Cause Doctrine") and Count II ("Violation of Illinois Sales Representative Act") against United fail because Tilkin has failed to make a foundational allegation: that United has made a single commissionable sale since Tilkin was terminated.  The problem with Tilkin's claim lies in the fact that <u>two</u> events allegedly occurred in

---

[3]    In Tilkin's Rule 26(a) initial disclosures, it estimates that it procured post-termination commissions for the remainder of 2007 in the amount of $250,000, but claims that it is entitled to more than $16,250,000 in total purported damages.

June 2007: (1) Tilkin was terminated; and (2) United sold all of its assets and stopped making

sales. While obligations regarding "post-termination commissions" may be implied using the

"procuring cause doctrine," the doctrine cannot impose "post-asset-sale" obligations –

particularly when they run contrary to the alleged terms of the contract.

**A.    Count I Fails Because United Has Breached No Express Contractual Term Or Implied "Procuring Cause" Term.**

Tilkin does not allege that United breached any express term in the Oral Agreement. The

pertinent term of the Oral Agreement is alleged in Paragraph 10 of the Complaint:

> In return for Tilkin's efforts, the parties agreed that Tilkin would
> be compensated by commission, computed as a percentage of all of
> the sales flowing from [the] industrial distributors [in whose
> catalogs Tilkin placed United products], including through their
> catalogs and eventually their websites (excluding shipping and
> handling charges and certain rebates offered by United Receptacle
> to the catalog customers).

As alleged by Tilkin, therefore, commissions are payable to Tilkin only when sales revenues are

received by United. In other words, United agreed to pay Tilkin a percentage of the sales

revenue flowing to and received by United from particular industrial distributors. The

parenthetical at the end of the term, which states that the commissionable sale amount is reduced

by "rebates offered by United Receptacle to the catalog customer," dispels any doubt about

whether the commissions were to be calculated based upon sales revenue received by United.

Tilkin does not, and cannot, allege that United agreed to pay Tilkin a percentage of sales revenue

flowing to Rubbermaid for sales of former United products. (*Id.*, ¶ 29.)

Although Tilkin relies upon the "procuring cause" doctrine to imply contract terms, the

procuring cause doctrine cannot supply terms which are counter to the actual terms of the Oral

Agreement. *Technical Representatives, Inc. v. Richardson-Merrell, Inc.,* 438 N.E.2d 599, 602

(Ill. App. Ct. 1982). Further, the procuring cause doctrine is meant to address commissions after

the termination of a sales agent, not commissions after the principal ceases operations.

*Scheduling Corp. of Am. v. Massello*, 503 N.E.2d 806, 809 (Ill. App. Ct. 1987) (doctrine addresses "commission on sales made after termination of a contract if that party procured the sales through its activities prior to termination").  However, Tilkin's claim against United relies on the procuring cause doctrine to read into the Oral Agreement not only a term regarding post-termination commissions, but also a term regarding post-asset-sale commissions.  In other words, Tilkin asks that a term be <u>inserted</u> requiring United to pay commissions on sales revenue flowing <u>to a third party</u>.   The doctrine, however, is not a tool for Tilkin to rewrite the parties' contract, inserting whatever obligations now suit it.  Tilkin is simply not entitled to its proverbial slice of the pie from United when United no longer receives pies from which to ration slices.

### B.     Count II, For Violation of The Illinois Sales Representative Act, Fails Because No Commissions Were Due Tilkin.

The Illinois Sales Representative Act ("ISRA") provides no guidance for <u>whether</u> a commission is due to a sales representative upon termination.  Rather, it serves two functions (1) to provide a default time period for payment of any commissions that are otherwise due (820 ILCS 120/2); and (2) to provide for the recovery of exemplary damages and fees in the event a principal fails to make timely payment of commissions that are otherwise due (820 ILCS 120/3).  Because no commissions are due Tilkin, its ISRA claim, alleged in Count II, fails.

The ISRA states, in pertinent part:

> All commissions <u>due at the time of termination of a contract</u> between a sales representative and principal shall be paid within 13 days of termination, and <u>commissions that became due</u> after termination shall be paid within 13 days of the date on which such commissions became due.

820 ILCS § 120/2 (emphasis added).

Although the ISRA imposes a timing element and can, in some circumstances, amplify damages claims, it does not independently provide a claim for commissions.  Therefore, where a party's procuring cause argument fails, its ISRA claim necessarily fails.  *Hammond Group, Ltd.*

*v. Spalding & Evenflo Co., Inc.*, 69 F.3d 845, 850-51 (7th Cir. 1995).  For commissions allegedly becoming due after termination, the agent must show it is entitled to those commissions in the first place before recovering under the Act, and thus must show it was the "procuring cause" for those commissions.  *Id.*  Further, the ISRA makes clear that "[w]hether a commission becomes due shall be determined," <u>first</u>, by [t]he terms of the contract between the principal and salesperson," which "shall control."  820 ILCS § 120/1(2)(A).  Because its contract and "procuring cause" arguments fail, Tilkin's ISRA claim must be dismissed.

Moreover, this Court has recognized controlling Illinois authority limiting recovery of "exemplary damages" under the ISRA to those cases in which a principal's conduct is considered outrageous.  *Hendrick-Walker Assoc., Inc. v. Viktron Technologies, Inc.*, 878 F. Supp. 119, 121 (N.D. Ill. 1995).  The allegations in the Complaint come nowhere near the applicable standard. In fact, Tilkin does not even allege that it ever demanded or requested payment from United before filing suit (it did not).  Therefore, Tilkin's demand for three times its alleged damages should be stricken now.

## II. The Unjust Enrichment Claim Against United in Count IV Is Defective As A Matter Of Law, Because It Is Based Upon The Contractual Relationship Between United And Plaintiff.

Tilkin's Count IV, for "Unjust Enrichment," is nothing more than a re-framing of its flawed Count I for "Breach of Contract / Procuring Cause Doctrine."  Tilkin alleges that United has been unjustly enriched because Rubbermaid purchased and paid United for future sales revenue which Tilkin claims to have "procured."  (Cmplt. ¶ 36.)  Because Tilkin claims to be the procuring cause of those future sales, it alleges it was entitled to its contractual "continuing commission" of precisely "5.5% (or 2.5% for two accounts) on these sales."  (*Id*. ¶ 38.)  Thus, Tilkin alleges it is entitled to "5.5% of the amount paid to United Receptacle by Rubbermaid for the projected revenue stream which would continue to flow from the sales of products through

the catalog and website space procured by Tilkin." (*Id.* ¶ 40.) This purported unjust enrichment claim is premised <u>entirely</u> upon Tilkin's alleged <u>contractual</u> entitlement to the previously <u>agreed upon</u> 5.5% commission (or 2.5% for two accounts) on sales it claims to have procured (as alleged in Count I). Because the unjust enrichment count arises wholly from a contractual relationship, Count IV against United must be dismissed.

Under Illinois law, as set forth by its Supreme Court: "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *LaThrop v. Bell Federal Sav. & Loan Ass'n,* 370 N.E.2d 188, 195 (Ill. 1977); *People ex rel Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992).

> When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract. In determining whether a claim falls outside a contract, the subject matter of the contract governs, not whether the contract contains terms or provisions related to the claim. The reason for prohibiting a claim of unjust enrichment between contracting parties is to prohibit a party whose expectations were not realized under the contract from nevertheless recovering outside the contract.

*Utility Audit, Inc. v. Horace Mann Service Corp.*, 383 F.3d 683, 688-689 (7th Cir. 2004).[4] In short, where an unjust enrichment claim is based upon the same subject matter covered by a contract, it fails.

Here, the sole basis for Tilkin's unjust enrichment claim against United is based on its contract with United (and the procuring cause doctrine which depends upon such a contract[5]).

---

[4] The elements of this cause of action are substantially similar under Pennsylvania law. *See Limbach Co., LLC v. City of Philadelphia*, 905 A.2d 567 (Pa.Commw.Ct. 2006). Where the application of relevant state law would not produce different results, a court need not engage in choice of law analysis and should apply the law of the forum state. <u>Jean v. Dugan</u>, 20 F.3d 255, 260 (7th Cir. 1994).

[5] The doctrine may entitle a party "to commission on sales made <u>after termination of a contract</u> if that party procured the sales through its activities <u>prior to termination</u>." *Scheduling Corp. of Am. v. Massello*, 503 N.E.2d 806, 809 (Ill. App. Ct. 1987) (emphasis added). The doctrine functions to

Tilkin does not allege Count IV in the alternative and does not allege the absence of a contract between it and United.  *See Creemens, Holloman, Siber, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("[o]nce a valid contract is found to exist, quasi-contractual relief is no longer available); *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 978 (N.D. Ill. 2008) (to plead unjust enrichment in the alternative, a plaintiff "must allege the absence of a valid contract").  In fact, Count IV obviously contemplates that a contract <u>did</u> exist, but was terminated.  In that Count and the incorporated allegations, Tilkin alleges:

- United "negotiated and <u>was a party to a contract</u> with an Illinois citizen that was substantially performed in, and connected to, Illinois."  (Cmplt. ¶ 2.)

- "At all times relevant to this Complaint, United Receptacle <u>employed</u> outside entities, <u>including Tilkin</u> . . ."  (*Id*. ¶ 8.)

- " . . . after continuously representing United Receptacle for approximately 28 years, Weiss informed Tilkin of its <u>termination</u>, effective in thirty days."  (*Id*. ¶ 14 (emphasis added).)

- "During the parties' approximately 28-year relationship....  United Receptacle received the sales revenue from Tilkin's efforts, and Tilkin was compensated by payment from United Reptacle of a commission . . ."  (*Id*. ¶ 33.)

- "At the time of its <u>termination</u> ... Tilkin's <u>commission rate</u> was 5.5% on all such orders, except for two accounts (Upbeat, Inc. and Direct Supply, Inc.) which were commissioned at 2.5%."  (*Id*. ¶ 33 (emphasis added).)

- "Through these efforts prior to its <u>termination</u>, Tilkin has procured the sales for United Receptacle's products . . . and is therefore entitled to recover commission on such sales for as long as they continue."  (*Id*. ¶ 36 (emphasis added).)

- ". . . all future sales of United Receptacle products through Tilkin's distributor clients should be commissionable to Tilkin."  (*Id*. ¶ 37.)

- "Had United Metal not been acquired by Rubbermaid, <u>Tilkin would have been due from United Receptacle a continuing commission of 5.5% (or 2.5% for two accounts) on these sales</u>."  (*Id*. ¶ 38 (emphasis added).)

---

create "a default term" in an existing contract between the principal and agent.  *Gadsby v. Norwalk Furniture Corp.*, 711 F.3d 1324, 1328 (7th Cir. 1995), *citing Harold Wright Co. v. E.I. Du Pont De Nemours & Co.*, 49 F.3d 308 (7th Cir. 1995).

In sum, as part of its unjust enrichment count, Tilkin alleges that United was party to a contract with "an Illinois citizen" – clearly Tilkin;  that United employed Tilkin and paid it agreed-upon commissions in exchange for services for twenty-eight years before United terminated that agreement; and that at the time of termination the parties had agreed upon a 5.5% commission for certain distributors and a 2.5% commission for others.  Tilkin alleges it is entitled to those same agreed-up commission rates after the termination of the agreement because it was the procuring cause of later sales.

In short, Tilkin has alleged an agreement with United which controlled the relationship between the two parties.  Because the parties' relationship was governed by a contract, Tilkin's unjust enrichment claim should be dismissed.

### III.    Weiss Is Not Individually Liable to Tilkin Under Any Legal Theory, Therefore the Four Counts Against Him Should Be Dismissed

Each of the counts against Weiss, Counts I ("Breach of Contract/Procuring Cause Doctring"), IV ("Unjust Enrichment"), V ("Shareholder Liability"), and VI ("Unjust Enrichment" again), fails because Weiss is simply an officer and shareholder of United and United has not been dissolved.  There is no basis in this dispute between corporations for Tilkin to aggressively interject personal claims against Weiss.

### A.    Count I Against Weiss Should be Dismissed Because He Is Not A Party To the Alleged Agreement

In Count I, Tilkin alleges that Weiss is liable to United for breach of contract.  However, Weiss was not a party to the contract between United and Tilkin, and Tilkin alleges no basis for his individual liability.  Indeed, Tilkin simply asks for judgment against United "and Richard Weiss as its agent."  (Cmplt., p. 7.)  Under Illinois law, a corporate officer or shareholder is

generally not liable for the corporation's contracts.[6]  *Sullivan v. Cox*, 78 F. 3d 322, 326 (7th Cir.

1996) (agent who acts on behalf of corporation in making contract cannot be personally liable on

contract unless some evidence of contrary intent appears), *citing Wottowa Ins. Agency, Inc. v.*

*Bock,* 472 N.E.2d 411, 413 (Ill. 1984).  Here, Tilkin's sole basis for naming Weiss in Count I is

his alleged status as an agent and officer of United.  There is no allegation that Tilkin had any

contractual relationship with Weiss or that Weiss was even involved in negotiating the contract.

Therefore, Count I should be dismissed as to Weiss.

> **B.     Count IV Against Weiss Should Be Dismissed Because Any Alleged**
> **Benefit He Received Was As A Mere Shareholder of United**

Tilkin's unjust enrichment claim (Count IV) against Weiss also fails.  Once again, Tilkin

merely alleges that Weiss is liable as United's "agent."  (Cmplt., p. 14.)  Tilkin alleges that

"United and/or Weiss did not pay any amount to Tilkin from the proceeds it received from

Rubbermaid"  (Cmplt., ¶ 38.)  The mysteriously singular entity "United and/or Weiss" is also

alleged to have received and retained a "larger than entitled benefit" from Rubbermaid.  (*Id.*)

However, Tilkin alleges that the assets of "United Receptacle," not "United and/or Weiss," were

sold to Rubbermaid.  (*Id*., ¶ 28.)  In any event, to the extent the catalog space allegedly procured

by Tilkin is an "asset," it is not alleged to have belonged to Weiss individually.  Obviously, to

the extent Weiss received any benefit from the sale of such an "asset" it was as a shareholder of

United, and Tilkin has failed to make any allegations justifying the piercing of United's

corporate veil.  *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir.

2002) (setting forth requirements to pierce veil under Illinois law).

---

[6]     The law in Pennsylvania is substantially similar on this issue.  See <u>Fletcher-Harlee Corp. v.</u>
<u>Szymanski</u>, 936 A.2d 87, 95 (Pa.Super. 2007).

C.    **Count V is Based On Predicate "Information and Belief" Disproved by Publicly-Available Information.**

Count V of Tilkin's Complaint alleges that Weiss is liable to Tilkin as a shareholder of United based solely on Pennsylvania statutory provisions that apply to dissolved corporations and Tilkin's incorrect "information and belief" that United has been dissolved. (Cmplt., ¶¶ 43-45.) If United had been dissolved, it would be reflected in the public records of the Commonwealth of Pennsylvania. However, those public records make clear that United was not dissolved, but simply changed its corporate name following the sale of its assets to Rubbermaid. (*See* Exhibit A hereto.) Because United was not dissolved, 15 Pa.C.S. § 1979(b) has no application to this case. As Count V is based upon an <u>entirely incorrect</u> factual predicate, the claim is legally defective and should be dismissed.

D.    **Count VI is Also Based On Predicate "Information and Belief" Disproved by Publicly-Available Information.**

Count VI is a second unjust enrichment claim against Weiss, alleging "upon information and belief" that United was dissolved and its assets were distributed to its shareholders. (Cmplt., ¶¶ 47-48.) As discussed above, United was not dissolved and thus distributions upon dissolution were not made. (*See* Exhibit A hereto.) Accordingly, the factual predicate to this claim, even assuming such a claim could be made, is incorrect. Likewise, for the reasons stated in Section V(B) above, an unjust enrichment claim cannot survive against Weiss by virtue of his status as an officer and shareholder of United. As such, the Court should dismiss Count VI of the Complaint.

<u>CONCLUSION</u>

For all of these reasons, defendants United Metal Receptacle Corp. and Richard Weiss request that the Court grant this Motion and dismiss Counts I, II and IV-VI of the Complaint. On the basis of the facts as alleged by Tilkin, there can be no claims against either of those

defendants.  Accordingly, United, as Tilkin admits, met its contractual obligations and paid

Tilkin all commissions due from United.

Dated:  June 2, 2008

UNITED METAL RECEPTACLE CORP.
and RICHARD WEISS


/s/  Abram Moore
*By One of Their Attorneys*
Irving B. Levinson
Abram I. Moore
Bell, Boyd & Lloyd LLP
70 West Madison Street
Suite 3100
Chicago, IL 60602-4207
312-781-6010 (phone)
312-827-8175 (fax)

Howard A. Rosenthal
Malcolm S. Gould
Pelino & Lentz, P.C.
One Liberty Place
Thirty-Second Floor
1650 Market Street
Philadelphia, PA 19103
215-665-1540 (phone)
215-665-1536 (fax)

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on June 2, 2008, the foregoing Rule 12(B)(6) Motion to Dismiss Plaintiff's Claims Against United Metal Receptacle Corp. and Richard Weiss was filed with the Clerk of the Court using the CM/ECF which will send notification of such filing to the following counsel of record:

| | |
|---|---|
| **Adam J. Glazer** | **David S. Makarski** |
| Schoenberg Finkel Newman & Rosenberg, LLC | Schoenberg Finkel Newman & Rosenberg, LLC |
| 222 South Riverside Plaza | 222 South Riverside Plaza |
| Suite 2100 | Suite 2100 |
| Chicago, IL 60606 | Chicago, IL 60606 |
| (312) 648-2300 | (312) 648-2300 |
| Email: adam.glazer@sfnr.com | Email: david.makarski@sfnr.com |

By:    /s/  Abram Moore
      Bell, Boyd & Lloyd LLP
      70 West Madison Street, Suite 3100
      Chicago, Illinois  60602-4207
      (312) 372-1121

# EXHIBIT A

Entity #: 369367
Date Filed: 07/03/2007
Pedro A. Cortés
Secretary of the Commonwealth

**PENNSYLVANIA DEPARTMENT OF STATE
CORPORATION BUREAU**

### Articles of Amendment-Domestic Corporation
(15 Pa.C.S.)

☒ Business Corporation (§ 1915)
☐ Nonprofit Corporation (§ 5915)

Name

Address **CT CORP-COUNTER**

City    State    Zip Code

Document will be returned to the name and address you enter to the left. ⇐

Commonwealth of Pennsylvania
ARTICLES OF AMENDMENT-BUSINESS 3 Page(s)

T0718664086

Fee: $70

In compliance with the requirements of the applicable provisions (relating to articles of amendment), the undersigned, desiring to amend its articles, hereby states that:

1. The name of the corporation is:
   United Metal Receptacle Corporation

2. The (a) address of this corporation's current registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is (the Department is hereby authorized to correct the following information to conform to the records of the Department):

| (a) Number and Street | City | State | Zip | County |
|---|---|---|---|---|
| 14th Street and Laurel Blvd., | Pottsville | PA | 17901 | Schuylkill |

   (b) Name of Commercial Registered Office Provider                County
   c/o

3. The statute by or under which it was incorporated: Pennsylvania Business Corporation Law

4. The date of its incorporation: 7/30/1970

5. Check, and if appropriate complete, one of the following:

   ☒ The amendment shall be effective upon filing these Articles of Amendment in the Department of State.

   ☐ The amendment shall be effective on: _____ at _____
                                          Date      Hour

PA. DEPT. OF STATE
2007 JUL -3

DSCB:15-1915/5915-2

---

6. *Check one of the following:*

☐ The amendment was adopted by the shareholders or members pursuant to 15 Pa.C.S. § 1914(a) and (b) or § 5914(a).

☒ The amendment was adopted by the board of directors pursuant to 15 Pa. C.S. § 1914(c) or § 5914(b).

---

7. *Check, and if appropriate, complete one of the following:*

☒ The amendment adopted by the corporation, set forth in full, is as follows

The name of the corporation shall be Bayacca, Inc. The address of the registered office of the corporation is 1811 Mahantongo Street, Pottsville, PA  17901

☐ The amendment adopted by the corporation is set forth in full in Exhibit A, attached hereto and made a part hereof.

---

8. *Check if the amendment restates the Articles:*

☐ The restated Articles of Incorporation supersede the original articles and all amendments thereto.

---

IN TESTIMONY WHEREOF, the undersigned corporation has caused these Articles of Amendment to be signed by a duly authorized officer thereof this

3rd day of July,

2007.

United Metal Receptacle Corporation
Name of Corporation

Richard Weiss
Signature

Richard Weiss, President
Title